# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3911

_____

Laverne Belk,                                    *
                                                 *
             Appellee,                           *
                                                 *   Appeal from the United States
      v.                                         *   District Court for the
                                                 *   Western District of Missouri.
City of Eldon, Scott Harrison, Steve             *
Wood, Brad Veach, Ron Bly,                       *
                                                 *
             Appellants.                         *

_____

Submitted:  June 16, 2000

Filed: October 2, 2000

_____

Before WOLLMAN, Chief Judge, BEAM, and BYE, Circuit Judges.

_____

WOLLMAN, Chief Judge.

Laverne Belk, formerly an employee of the city of Eldon, Missouri, filed suit against the city and Scott Harrison, Steve Wood, Brad Veach, and Ron Bly, four members of its Board of Aldermen, in their individual capacities (collectively, the defendants), claiming that her discharge was in retaliation for the exercise of her First Amendment rights. The district court[1] entered judgment on the jury's verdict for the

---

[1] The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

plaintiff and awarded damages, including front pay. The defendants appeal, contending that the district court should have granted their motions for judgment as a matter of law or, in the alternative, for a new trial, because Belk's speech was not protected and because the aldermen were entitled to qualified immunity. We affirm.

## I.

Because the defendants appeal the district court's denial of their Rule 50(b) motion for judgment as a matter of law, we take all facts in the light most favorable to Belk. Belk was a long-time employee of the city of Eldon. In 1996, she held two positions with the city. She had held her annual appointment by the board as the city clerk since 1982. She was also, as an at-will employee, the assistant to the city administrator, James Link. In these positions, she performed a number of administrative, clerical, and supervisory duties, and reported directly to Link, who was employed by the city on a contractual basis.

By all accounts, Belk and Link worked together without incident until Debra Carpenter was hired by the city in 1995. Tensions arose between Carpenter and other city employees under Belk's supervision, and rumors began to circulate that Carpenter and Link were having an extramarital affair. In the course of her work, Belk saw a bill for health insurance that she believed showed that Carpenter was receiving benefits inappropriate to her employment status. Belk sent a memo to Link expressing her concerns, but was rebuffed.

In October of 1995, Belk spoke privately with Harold Dolby, then one of the members of the Eldon Board of Aldermen. She told him (1) that rumors were circulating about Link and Carpenter, and (2) that she believed Carpenter was receiving benefits to which she was not entitled. In November of 1995, Link, acting with the acquiescence of the board, fired Belk from the position of assistant city administrator.

-2-

Until her conversation with Dolby, Belk had consistently received favorable job performance reports. Faced with the same turmoil in the city administration that led to Belk's termination, the board hired an attorney to act as an independent investigator to evaluate the rumors about Link and Carpenter and the rift in the city's administrative staff and to recommend a solution. The investigator recommended that both Belk and Link be terminated.

In April of 1996, at the end of Belk's term as city clerk, the board followed Link's recommendation and appointed Betty Rayhart as the new city clerk. In order to achieve a unanimous vote on Rayhart's appointment, the Board also voted not to renew Link's contract, effectively converting him to an at-will employee upon the expiration of the contract.

Belk filed suit in district court, alleging that the board discharged her in retaliation for the exercise of her First Amendment rights in speaking with Dolby and that she had been discriminated against on the basis of sex. The jury found for the defendants on the sex discrimination claim, but found for Belk on her retaliatory discharge claim.

## II. First Amendment Claims

The defendants argue that the district court erred in denying their motions for post-verdict judgment as a matter of law under Federal Rule of Civil Procedure 50(b) or, in the alternative, for a new trial under Rule 59(a). They base their arguments on three alternative contentions: (1) that Belk's speech[2] is not protected by the First

---

[2]Our findings upholding Belk's retaliatory discharge claim based on her conversation with Dolby are alone sufficient to require us to affirm the decision of the district court. We therefore decline to address the additional constitutional issues raised by Belk's freedom of association claim.

Amendment because it did not address a matter of public concern; (2) that, even if it did address a matter of public concern, under the Pickering balancing test her speech is not protected because Belk's interests in her First Amendment rights were outweighed by the public interest in the smooth functioning of the city administration; and (3) that, even if Belk was improperly terminated, the members of the board were entitled to qualified immunity.[3] We reject all three contentions.

We review a district court's denial of a judgment as a matter of law de novo, applying the same standard as that employed by the district court. See Manning v. Metropolitan Life Ins. Co., 127 F.3d 686, 689 (8th Cir. 1997). We resolve all doubts in favor of the non-moving party and give that party the benefit of all reasonable inferences. See Brown v. United Missouri Bank, 78 F.3d 382, 387 (8th Cir. 1996). "Judgment as a matter of law is appropriate only when all of the evidence points one way and is 'susceptible of no reasonable inference sustaining the position of the nonmoving party.'" McKnight v. Johnson Controls, 36 F.3d 1396, 1400 (8th Cir. 1994) (quoting White v. Pence, 961 F.2d 776, 779 (8th Cir. 1992)). Post-verdict judgment as a matter of law is appropriate only where the evidence is entirely insufficient to support the verdict. See Greaser v. State Dep't of Corrections, 145 F.3d 979, 984 (8th Cir. 1998).

The denial of motion for a new trial under Fed. R. Civ. P. 59(a) is reviewed with great deference to the district court's ruling and will not be reversed in the absence of a clear abuse of discretion. See McKnight, 36 F.3d at 1400. "The key question is whether a new trial should have been granted to avoid a miscarriage of justice." Id.

---

[3]The defendants also argue that the district court should have granted their motion for judgment as a matter of law because there was insufficient evidence that Belk was terminated because of her speech. This contention was not raised in the defendants' pre-verdict motion, however, and thus we need not reach its merits. See Fed. R. Civ. P. 50(b) cmt. (1991) ("A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion.").

Whether the First Amendment shields a public employee from discharge as a result of her speech requires a two-step judicial inquiry.  See Shands v. City of Kennett, 993 F.2d 1337, 1341 (8th Cir. 1993).  First, we determine whether the employee's speech can be "fairly characterized as constituting speech on a matter of public concern."  Connick v. Meyers, 461 U.S. 138, 146 (1983); Shands, 993 F.2d at 1342.  Second, if the speech addresses a matter of public concern, we balance the "interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  Pickering v. Board of Educ., 391 U.S. 563, 568 (1968); Shands, 993 F.2d at 1342.  Both inquiries are questions of law for the court to decide.  See Connick, 461 U.S. at 148 n.7, 150 n.10; Shands, 993 F.2d at 1342.  Any underlying factual disputes, however, are properly submitted to the jury through special interrogatories or special verdict forms.  See Shands, 993 F.2d at 1342.

## A. The Connick Analysis

Belk's comments are not entitled to First Amendment protection unless they addressed matters of public concern.  See Connick, 461 U.S. at 146.  Matters of public concern include matters of political, social, and other concern to the community.  See id. at 147-48.  In evaluating speech under the Connick framework, we examine the content, form, and context of the speech as revealed by the entire record.  See id.; Shands, 993 F.2d at 1343.  The defendants argue that Belk's statements to Dolby did not address matters of public concern because (1) Belk's  statements were not made in a public setting, (2) Belk herself was motivated by a desire to spread gossip and animosity toward Link, and (3) her statements were "purely job-related."

## 1. Content

"We generally have held that speech about the use of public funds touches upon a matter of public concern."  Kincade v. City of Blue Springs, 64 F.3d 389, 396 (8th

Cir. 1995). Allegations of the misuse of public funds relate directly to citizens' interests as taxpayers, and are generally considered to address matters of public concern despite their personal pecuniary ramifications. See Kincade, 64 F.3d at 396; Casey v. City of Cabool, 12 F.3d 799, 803 (8th Cir. 1993).

Speech that criticizes a public employer in his capacity as a public official also addresses matters of public concern. "Criticism, no matter how obnoxious or offensive, of government officials and their policies clearly addresses matters of public concern." Casey, 12 F.3d at 802.; see Barnard v. Jackson County, 43 F.3d 1218, 1225 (8th Cir. 1995) (holding allegations of wrongdoing by public officials are on the highest order of First Amendment concern). Heightened public interest in a particular issue, while not dispositive, may also indicate that the issue is one of public concern. See Bowman v. Pulaski County Special School Dist., 723 F.2d 640, 644 (8th Cir.1983) (holding that media coverage and citizen activism " . . . are a good indication of the public's interest").

Not every statement made by a public employee about her job addresses a matter of public concern, however. "When a public employee's speech is purely job-related, that speech will not be deemed a matter of public concern . . . . Unless the employee is speaking as a concerned citizen, and not just as an employee, the speech does not fall under the protection of the First Amendment." Buazard v. Meredith, 172 F.3d 546, 548 (8th Cir. 1999). In Tuttle v. Missouri Department of Agriculture, for instance, we held that a grain inspector's conversation with his supervisor touching on recent worker cutbacks, employment policies, possible increases in salaries, promotions, and safety issues did not address matters of public concern because the employee was speaking solely as an employee. 172 F.3d 1025, 1034 (8th Cir. 1999). Statements that deal with personnel matters are not generally protected by the First Amendment, and statements of "purely academic interest" to the speaker will be given broader protection than those in which she has a personal interest. See Shands, 993 F.3d at 1343. The question

-6-

before us, then, is whether Belk's statements, which were unquestionably related to her employment, addressed solely personnel matters or matters of public concern.

First, Belk's statements implicated her interests as a citizen-taxpayer by alleging the misuse of public funds. The jury specifically found that Belk told Dolby that she believed a city employee was receiving benefits to which she was not entitled. The clear implication of such a statement is that public funds were being misused. Unlike the plaintiff in Tuttle, Belk had no employment-based personal pecuniary interest in the subject matter of her comments; her interest was academic. Belk and Carpenter did not have the same employment status, nor do Carpenter's benefits appear to have had any link to Belk's. Thus, Belk had no interest in Carpenter's benefits beyond those of a citizen.

Second, Belk's conversation with Dolby addressed a matter of public concern because, at its base, it was a criticism of the city administrator's conduct as a public official, not as her supervisor. Belk found fault not with Link's office policies as they affected her and her fellow employees, but with what she perceived as his misuse of his public position. Moreover, the fact that the issue was taken up by a concerned citizen's group indicates that there was public interest in the matter.

The defendants repeatedly point out that Belk's statements to Dolby included reports that rumors were circulating about Link's relationship with Carpenter. Although such statements may have been in poor taste, they were nonetheless part of Belk's protected speech, because they provided a potential explanation for Link's alleged misuse of public funds.

## 2. Form and Context

Even when the content of a public employee's speech addresses matters of public concern, the form and context of the speech are also relevant to our analysis. See Shands, 993 F.2d at 1343. The defendants charge that Belk's statements, taken in context, could not have addressed matters of public concern because they were made in the course of a private conversation with Dolby and because she had improper motives for making them.

Although the context of the speech must be considered, the fact that a plaintiff made statements in a private conversation about a public official toward whom she may have harbored personal animosity does not vitiate the status of statement as addressing a matter of public concern. See Rankin v. McPherson, 483 U.S. 378, 387 n.11 (1987). Private statements are particularly amenable to First Amendment protection when they are made to a public official in his official capacity. See id. at 387. "The inappropriate or controversial character of a statement is irrelevant to the question of whether it deals with a matter of public concern." Id.. Nor does the presence of unsavory personal motives eviscerate the protection, so long as the speech itself addresses matters of public concern. See id.

If it raises any inference, the private nature of Belk's conversation with Dolby suggests that her statements addressed matters of public concern. After coming across information that she believed revealed inappropriate compensation of a city employee, she approached an elected city official in private and passed on the information, identifying the portion that she knew to be a rumor. Although her conduct may not be so obvious an exercise of political speech as pamphleteering or soap-box speeches, it is considerably more so than, for instance, the offhand comment of the plaintiff in Rankin who, in the course of a private conversation with a coworker, stated that she hoped that the next attempt on the President's life would be successful.

The defendants also point to Belk's admitted difficulties with Link as evidence that her motivations were those of a town gossip rather than a concerned citizen. Taking the evidence in the light most favorable to Belk, as we must, we see no basis for the defendants' contention that Belk was motivated by a desire to spread gossip and rumors about Link. She told Dolby that reports of the affair were only rumors. She spoke to him in private, and asked him not to share her comments with others. Later, when she was presented with the more public forum at the meeting of the concerned citizen's group, she chose not to comment on Link's affair. Any prurient appeal that Belk's statements may have contained did not affect their underlying content, nor did it give Belk a personal interest in passing on the information that would diminish its First Amendment protection. Accordingly, we reject the defendants' contextual argument. In light of the jury's findings that Belk told Dolby of her concerns about Carpenter's benefits and that this conversation was a motivating factor in Belk's discharge, we proceed to the second portion of the Connick framework. See Shands, 993 F.2d at 1343.

## B. The Pickering Analysis

Having determined that Belk spoke on a matter of public concern, we must next determine whether the actions of the board were improper. To do so, we balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568. This highly fact-specific balancing "requires full consideration of the government's interest in effective and efficient fulfillment of its responsibilities to the public." Connick, 461 U.S. at 150. Government entities, in their capacities as employers, have wide discretion and control over personnel decisions, internal affairs, discipline, and office policy. See Shands, 993 F.2d at 1344 (citing Connick, 461 U.S. at 151; Ex parte Curtis, 106 U.S. 371, 373 (1882)).

Under the Pickering test, a number of interrelated factors are taken into account in balancing the competing interests of government-employer and citizen-employee. These factors include: (1) the need for harmony in the office or work place; (2) whether the government's responsibilities require a close working relationship to exist between the plaintiff and co-workers when the speech in question has caused or would cause the relationship to deteriorate; (3) the time, manner, and place of the speech; (4) the context in which the dispute arose; (5) the degree of public interest in the speech; and (6) whether the speech impeded the employee's ability to perform his or her duties. See Shands, 993 F.2d at 1344 (quoting Bowman v. Pulaski County Special Sch. Dist., 723 F.2d 640, 644 (8th Cir. 1983) (citing Connick, 461 U.S. at 151-54)). Although the balancing of interests is a matter of law for the district court, the underlying factual questions should be submitted to the jury, generally through interrogatories or a special verdict form. See Shands, 993 F.2d at 1342.

In cases where the public employer cannot demonstrate that the employee's speech disrupted the workplace, however, the court need not proceed to a specific Pickering factor analysis absent exceptional circumstances. In Sexton v. Martin, we noted that some evidentiary showing is a threshold inquiry to the appropriate application of the Pickering factors. 210 F.3d 905, 911-12 (8th Cir. 2000).

> Before the Court commences the Pickering balancing test, however, it is critical to determine whether the defendant has produced sufficient evidence that the speech had an adverse effect on the efficiency of the employer's operations. In other words, to put the Pickering balancing test at issue, the public employer must proffer sufficient evidence that the speech had an adverse impact on the department. The more the employee's speech reflects matters of public concern, the greater the employer's showing must be that the speech was disruptive before the speech can be punished.

Id., 210 F.3d at 911-12 (citing Burnham v. Ianni, 119 F.3d 668, 678-79 (8th Cir. 1997). "Mere allegations of disruption are insufficient to put the Pickering balance at issue." Id. at 912; see Kincade, 64 F.3d at 398-99. Where there is no evidence of disruption, resort to the Pickering factors is unnecessary because there are no government interests in efficiency to weigh against First Amendment interests.

The defendants argue that the district court erred in refusing to submit to the jury three interrogatories addressing specific Pickering factors and instead substituting a broader inquiry as to whether the functions of the Eldon city government had been impeded. They assert that the district court's interrogatories provided an insufficient factual basis for the court to rule on the Pickering test and that under a proper application of the test they are entitled to judgment as a matter of law.

The district court has broad discretion in ruling on proffered jury instructions, and its decision is subject to reversal only if the instructions, viewed in their entirety, contained an error or errors that affected the substantial rights of the parties. See Horstmeyer v. Black & Decker, 151 F.3d 765, 771 (8th Cir. 1998). So long as the charge as a whole adequately states the law, the district court has discretion over the "style and wording" of instructions. See id. (quoting Beckman v. Mayo Found., 804 F.2d 435, 438 (8th Cir. 1992)).

The defendants argue that their evidence that Belk's speech was disruptive was sufficient to raise a factual question of workplace impediment, pointing to Belk's testimony that Link's reaction to her speech made it difficult for Belk to perform her job. Belk counters that Link's reaction to her speech is properly understood as part of the city's retaliatory behavior and should not be considered when determining whether her speech was disruptive in and of itself.

In Burnham, we held that a "government employer must make a substantial showing that the speech is, in fact, disruptive before the speech may be punished." 119

F.3d at 680. Although the record contains ample evidence that Eldon's city hall had become a tumultuous place to work, there is no indication that Belk's speech was the cause of that tumult. Belk's testimony that Link's reaction to her statements made her job more difficult is insufficient to show disruption without some evidentiary showing that the functioning of the city government suffered as a result of her discomfort. Accordingly, the district court cannot be said to have abused its discretion by submitting the threshold inquiry, rather than the specific Pickering factors, to the jury.

We conclude that the defendants failed to demonstrate sufficient evidence of workplace disruption to bring the Pickering factors into play and that the jury charge, as given, fairly and accurately stated the law to the jury. Moreover, the jury's specific finding that Belk's speech posed no impediment to the functioning of the city administration obviated the need for interrogatories incorporating the Pickering factors. Thus, the district court did not abuse its discretion in declining to submit them to the jury, and the defendants were not entitled to judgment as a matter of law on this issue.

### C. Qualified Immunity

The defendants argue that even if Belk's termination was actionable, the district court erred in not dismissing the claims against Wood, Veach, Harrison, and Bly personally. In essence, the four aldermen assert that they acted reasonably and within their official capacities and that they were therefore entitled to qualified immunity. We disagree.

The doctrine of qualified immunity protects state actors from civil liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal citations omitted). Qualified immunity applies in a retaliatory discharge case if (1) the plaintiff has asserted a violation of a constitutional or statutory right, and (2) that right was not clearly established when the plaintiff was discharged.

Sexton, 210 F.3d at 909. If the unlawfulness of the official's conduct is apparent in view of preexisting law, the qualified immunity defense ordinarily fails, since "a reasonably competent public official should know the law governing his conduct." See id. (quoting Harlow, 456 U.S. at 818-19). Thus, the aldermen are entitled to qualified immunity only if Belk's right to free speech was not clearly established at the time of her discharge. See id.

Belk was discharged in 1995. As early as 1985, the Supreme Court had found a clear First Amendment protection for public employees. "It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." Rankin, 483 U.S. at 382. Our own precedent evidences this principle as well. See Hafley v. Lohman, 90 F.3d 264, 267 (8th Cir. 1996) (holding that retaliatory discharge is a clearly established First Amendment violation); Casey, 12 F.3d at 804 ("No right is more clearly established in our republic than freedom of speech.").

The crux of the defendants' argument is that, because the evaluation of Belk's claim implicates Pickering, they are automatically entitled to qualified immunity. Although we have held that public employers are not required to anticipate the outcome of the delicate Pickering balancing, see Grantham v. Trickey, 21 F.3d 289, 292 (8th Cir. 1994), that reasoning applies only to cases where the employer has made some showing of impediment to its efficient functioning. Where, as here, the employer has failed to demonstrate any disruption, there is no balancing to be done and the evidentiary failure is fatal to the claim of qualified immunity. See Sexton, 210 F.3d at 913.

The defendants also argue that their reliance on the opinion of an attorney-investigator renders their actions reasonable and should bring them within the protection of qualified immunity. We find this argument unpersuasive. The investigator testified that he did not know of Belk's statements to Dolby. The board

-13-

therefore could not reasonably have relied on his assurances that discharging Belk would not constitute a violation of her First Amendment rights. Thus, the district court properly denied the defendants' motion.

### III. Front Pay

Finally, the defendants contest the district court's front pay award. Pointing to Belk's acquisition of a new job and to her farming investments, they argue that the district court's award amounts to a windfall for Belk. In particular, they contend that the court's use of a ten-year period to calculate the front pay amount was excessive. We disagree.

"The calculation of front pay, which is necessarily uncertain, is a matter of equitable relief within the district court's sound discretion." Hukkanen v. International Union of Operating Eng'rs, 3 F.3d 281, 286 (8th Cir. 1993). The purpose of an award of front pay is to compensate a wrongfully terminated employee where reinstatement is not a practical alternative. See Denesha v. Farmer Ins. Exchange, 161 F.3d 491, 501-02 (8th Cir. 1998). "[C]ourts will presume for the purposes of awarding relief that an illegally discharged employee would have continued working for the employer until he or she reaches normal retirement age, unless the employer provides evidence to the contrary." MacDissi v. Valmont Industries, Inc., 856 F.2d 1054, 1060 (8th Cir. 1988). In Hukkanen, we held that an award of front pay calculated for a ten-year period was within the district court's discretion. 3 F.3d at 286.

The district court reduced the jury's recommendation of $310,000 in front pay, awarding Belk $119,000. The court calculated the difference between Belk's current salary and her salary during her employment with the city of Eldon, multiplied that difference by ten years, and discounted that amount to a present value of $119,000. Nothing in the record suggests that ten years is an unreasonable length of time in this case. In fact, the district court particularly noted that Belk's limited education and

Eldon's rural location would make it difficult for Belk to find a job that would compensate her as well as her employment with the city.

The defendants also argue that the district court ought to have offset Belk's front pay award by her anticipated farming income. Defendants themselves point out, however, that Belk had begun to make her agricultural investments while still employed with the city. Thus, any farming income would have been additional to her salary as a city employee. Because the purpose of awarding front pay is to compensate the plaintiff for what she would have had but for her wrongful termination, the district court was correct in not penalizing Belk for farming income that she would have had in any case.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-15-