# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 00-1217/1242/1243/1244/1245

_____

| | | |
|---|---|---|
| Wendell Domina, Blaise Riggs, Linden Snyder, Van Harpold, and Jerry Soule, | * * * * | |
| Appellees, | * * | |
| v. | * * * | Appeals from the United States District Court for the District of Nebraska. |
| George Van Pelt, Individually; Klayton Johnson, Individually; Dale Shaul, Individually; and Charles Person, Individually, | * * * * * | |
| Appellants. | * | |

_____

Submitted: September 15, 2000

Filed: December 26, 2000
_____

Before HANSEN, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

We view the record in the light most favorable to the plaintiffs. *See Burnham v. Ianni*, 119 F.3d 668, 673 (8th Cir. 1997) (*en banc*). While Blaise Riggs was a member of the Banner County, Nebraska, road crew, he observed Charles Person, who

had recently retired as the county road superintendent, and the road department secretary in an office during the noon hour engaged in what appeared to be a sexual act. On the same day, Mr. Riggs reported the incident to his supervisor. The next day, the other four plaintiffs, who were also road crew members, overheard Mr. Riggs and his supervisor discussing the incident. On the following work day, the supervisor directed Mr. Riggs to tell the entire road crew about the incident. The supervisor then asked Mr. Riggs and the other road crew members to accompany him to the home of defendant George Van Pelt, a county commissioner, and to apprise Mr. Van Pelt of the incident. Mr. Van Pelt subsequently contacted defendants Klayton Johnson and Dale Shaul, two other county commissioners.

Mr. Riggs and the secretary were placed on paid leave pending the completion of an investigation. The county attorney characterized the results of the investigation as "inconclusive," partly because Mr. Person and the secretary denied engaging in the sexual conduct. Mr. Riggs was eventually fired, and the other road crew members were advised by letter that they would be subject to discipline, including discharge, if they discussed the incident at work or on county property. According to the letter, there were no restrictions on what the road crew members could say on their own time and away from county property, but they were "strongly encourage[d]" not to discuss the matter at all.

Following a hearing regarding Mr. Riggs's discharge, the county offered to reinstate him to his position on the road crew. He was told, however, that he would not be promoted to a supervisory position that he had been scheduled to assume. Mr. Riggs declined the county's offer. The commissioners stated that they denied Mr. Riggs the supervisory position because of the way in which he reported the relevant incident, including having told his co-workers what he had observed, and because he later said that he was uncomfortable approaching two of the commissioners.

The plaintiffs sued the defendants in their individual capacity under 42 U.S.C. § 1983, alleging that Mr. Person and the commissioners violated the plaintiffs' constitutional rights. Mr. Riggs alleged that the defendants retaliated against him for reporting the incident, and that their actions in suspending, discharging, and, after reinstatement, denying him a promotion, violated his first amendment right of freedom of expression. He also alleged that the defendants' actions discouraged him from further protected speech and violated his right to equal protection. The other four plaintiffs alleged that the letter forbidding them to discuss the incident violated their first amendment and equal protection rights.

The defendants moved for summary judgment on the basis of qualified immunity. The district court denied the motions, and the defendants appeal.

## I.

Initially, we reject the plaintiffs' contention that the defendants waived any right to qualified immunity that they might have had by failing to raise the defense prior to moving for summary judgment. We have previously observed that "[q]ualified immunity is usually raised by a motion for summary judgment after a limited amount of discovery has been conducted," *Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997). We note, moreover, that the defendants moved for summary judgment on the ground of qualified immunity within the time limits specified by the district court.

## II.

The plaintiffs also contend that Mr. Person may not assert a qualified immunity defense because he was no longer employed by the county when he allegedly violated the plaintiffs' constitutional rights. Public officials, of course, are entitled to qualified immunity from liability for damages under 42 U.S.C. § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Private individuals, however, are not necessarily shielded from liability under § 1983 by the

immunity afforded public officials. *See Richardson v. McKnight*, 521 U.S. 399, 402-04 (1997). Generally, to determine whether a private individual may rely on a qualified immunity defense, the courts look to the policy considerations supporting the doctrine of qualified immunity and to the historical availability of the defense to the group to which the individual belongs. *See id.* at 403-04.

Here, Mr. Person makes no effort to explain why the defense of qualified immunity that is available to public officials should be extended to him as a private citizen. We therefore decline to review the district court's order denying him the defense. *Cf. Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp.*, 986 F.2d 1208, 1212 (8th Cir. 1993) (appellant waived right to appeal district court's ruling by failing to specify errors and to cite relevant authority).

## III.

The county commissioners, as public officials, may appeal the district court's orders denying them summary judgment based on qualified immunity insofar as their entitlement to that defense depends on whether certain facts show a violation of clearly established law. *See Hunter v. Namanny*, 219 F.3d 825, 829 (8th Cir. 2000). Our review is *de novo*. *See id.*

To determine whether these defendants are entitled to qualified immunity, we ask, first, whether the plaintiffs alleged the deprivation of a federal constitutional right. *See Conn v. Gabbert*, 526 U.S. 286, 290 (1999). If necessary, we then decide whether the law was clearly established at the time of the alleged constitutional violation. *See id.* If we determine that the law was clearly established at the relevant time, we consider "whether, given the facts most favorable to the plaintiffs, there are no genuine issues of material fact as to whether a reasonable official would have known that the alleged action violated that right," *Burnham*, 119 F.3d at 673-74. "[I]f the law claimed to have been violated was clearly established, the qualified immunity defense ordinarily fails, 'since a reasonably competent public official should know the law governing his

-4-

conduct,' " *Sexton v. Martin*, 210 F.3d 905, 910 (8th Cir. 2000), quoting *Harlow*, 457 U.S. at 819.

Since Mr. Riggs contends that his first amendment right of free expression was violated, we consider initially whether the speech he engaged in was on a matter of public concern. A public employee's speech that "cannot be fairly characterized as [pertaining to] a matter of public concern," *Connick v. Myers*, 461 U.S. 138, 146 (1983), is not entitled to first amendment protection. In order to be speech on a matter of public concern, the employee's expression must "be fairly considered as relating to any matter of political, social, or other concern to the community," *id.*

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record," *id.* at 147-48. Generally, a public employee's speech as an employee "upon matters only of personal interest," rather than speech as "a citizen upon matters of public concern," *id.* at 147, is not protected by the first amendment.

With regard to content alone, we do not believe that the report of a sexual act during the noon lunch hour between a public employee and her former supervisor would necessarily be a matter of public concern. We must also examine Mr. Riggs's speech, however, in the context in which it arose. Before Mr. Riggs's report, he and the other road crew members had been upset for some time about favoritism to the secretary. The secretary had received a significant pay raise that the other employees did not receive, and although her paid hours had doubled, her work did not increase accordingly, and she spent work time on such activities as painting pictures and playing cards with Mr. Person.

"Heightened public interest in a particular issue, while not dispositive, may also indicate that the issue is one of public concern," *Belk v. City of Eldon*, 228 F.3d 872, 878 (8th Cir. 2000). During the year prior to Mr. Riggs's report, the community was

"buzzing" with rumors that Mr. Person and the secretary were having an affair, and community members had expressed concern that Mr. Person and the secretary were misusing county time and tax dollars. Several months before Mr. Riggs reported the incident, the county commissioners received an anonymous letter from a "very concerned taxpayer," complaining that people were angry because "Mr. Person ha[d] his own call girl on the county payroll" and that they were seen together during business hours "driving around the county" and at stores and restaurants. The letter also claimed that other people had seen this occurring and wanted it to stop, and that tax dollars were being wasted. According to the county clerk's deposition, when the letter was given to the commissioners and to Mr. Person during a commission meeting, one of the commissioners remarked that Mr. Person "needed to keep a lower profile."

In *Belk*, we held that the plaintiff spoke on a matter of public concern when she reported to a city alderman that there were rumors of an extramarital affair between a female city employee and her supervisor and that the female employee might have been receiving benefits to which she was not entitled. *See id.* at 876-77, 879. We held that the use of public funds was at issue, and that the mention of rumors regarding the affair was "part of [the plaintiff's] protected speech, because they provided a potential explanation for [the supervisor's] alleged misuse of public funds," *id.* at 879.

"We generally have held that speech about the use of public funds touches upon a matter of public concern," *Kincade v. City of Blue Springs*, 64 F.3d 389, 396 (8th Cir. 1995), *cert. denied*, 517 U.S. 1166 (1996). Here the incident that Mr. Riggs reported provided an explanation for previous complaints made during Mr. Person's tenure that working hours (and thus tax dollars) were being used for non-work activities. We therefore reject the commissioners' contention that Mr. Riggs's statements did not have to do with matters of public concern.

IV.

The commissioners would nonetheless be protected by qualified immunity if in early 1998 (the time of their alleged misconduct) it was not clearly established that the speech in which Mr. Riggs engaged was on a matter of public concern. *See Harlow*, 457 U.S. at 818. To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

We have "taken a broad view of what constitutes 'clearly established law' for the purposes of a qualified immunity inquiry, requiring some but not precise factual correspondence with precedents and demanding that officials apply general, well-developed legal principles," *Boswell v. County of Sherburne*, 849 F.2d 1117, 1121 (8th Cir. 1988), *cert. denied*, 488 U.S. 1010 (1989), quoting *Lappe v. Loeffelholz*, 815 F.2d 1173, 1177 n.3 (8th Cir. 1987). We also must review the facts known to the commissioners to determine whether they reasonably should have known that their actions, in light of those facts, would violate the law. *See Miller v. Schoenen*, 75 F.3d 1305, 1308 (8th Cir. 1996).

Three years before the county commissioners disciplined Mr. Riggs, we observed that our holdings generally indicate that speech about the use of public funds "touches upon a matter of public concern," *Kincade*, 64 F.3d at 396. Earlier, in *Hamer v. Brown*, 831 F.2d 1398, 1402 (8th Cir. 1987), we held that the relevant speech addressed a matter of public concern because, *inter alia*, it "related to the expenditure of public funds." We therefore believe that at the time the commissioners disciplined Mr. Riggs there existed a "well-developed legal principle[]," *Boswell*, 849 F.2d at 1121, that speech regarding the use of public funds was on a matter of public concern. *Cf. Belk*, 228 F.3d at 882. We also believe that widespread rumors in the community and the letter to the commissioners connecting Mr. Person's alleged affair to the loss of tax dollars support a finding that the commissioners reasonably should have known

that Mr. Riggs's report of the incident related to the misuse of public funds, which is a matter of public concern.

## V.

The commissioners argue that regardless of whether Mr. Riggs spoke on a matter of public concern, they are entitled to qualified immunity because his speech disrupted the workplace. If a public employee's speech is found to be on a matter of public concern, the court then must balance the employee's interests as a citizen "in commenting upon matters of public concern and the interest of the [public employer] ... in promoting the efficiency of the public services it performs," *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), to determine whether the speech is protected under the first amendment. The balancing is done by the court, but underlying factual questions, such as "whether the speech created disharmony in the work place," *Shands v. City of Kennett*, 993 F.2d 1337, 1342 (8th Cir. 1993), *cert. denied*, 510 U.S. 1072 (1994), are for the jury.

The district court denied summary judgment based on factual disputes in the record as to whether employee morale was affected by the speech in question. *Cf. Grantham v. Trickey*, 21 F.3d 289, 295 n.4 (8th Cir. 1994). Although "in many free speech cases the outcome of the *Pickering* balancing test would be unclear to a reasonable official," *Sexton*, 210 F.3d at 914, and thus the official would be protected by qualified immunity, here we agree with the district court that factual questions prevent us from reaching such a conclusion.

Under the fact-intensive analysis of *Pickering*, the commissioners had to present evidence that Mr. Riggs's speech adversely affected the efficiency of the county's operations. *See Grantham*, 21 F.3d at 294. In *Grantham*, 21 F.3d at 295 n.4, we concluded that the officials were entitled to qualified immunity based on "specific and unrefuted evidence" that the speech in question "substantially disrupted the work environment." We observed that our holding did not permit an official to obtain

qualified immunity by "simply asserting [that] the exercise of free speech rights affected morale," *id.*

Here the commissioners argue generally that their actions were justified by the county's concerns about the operation of the office, possible defamation claims, and the integrity of the county's grievance process and sexual misconduct reporting practices. They also cite a letter from the secretary's attorney stating that after Mr. Riggs's discharge, a hostile work environment existed when a member of the public entered the road department office, made a sexual remark apparently directed to the secretary, and her co-workers laughed.

According to the plaintiffs' affidavits, they noticed that the morale of the road crew employees (other than the secretary) improved after Mr. Riggs reported the incident. Once the report was made, they were relieved; they believed that the county commissioners would address the problem, and that the ongoing stress created by the relationship between Mr. Person and the secretary would be eliminated. The plaintiffs also attested that after the incident was reported, they continued to perform their work in the same way they had performed it in the past, although there were times that were "very stressful."

Because there are factual disputes regarding the impact of Mr. Riggs's speech, we are unable to determine whether his interest in his speech outweighed the county's interest in functioning effectively; for the same reason, we cannot decide whether it was clearly established that his speech was entitled to first amendment protection. We therefore conclude that the district court properly refused to grant summary judgment, based on qualified immunity, to the county commissioners on Mr. Riggs's first amendment claims.

VI.

Turning to the first amendment claims of the other four plaintiffs, we examine the "content, form, and context," *Connick*, 461 U.S. at 147-48, of the speech that the letter, which was read to them, prohibited. The letter permitted the employees to discuss outside the working environment the incident reported by Mr. Riggs. The letter was read to the other plaintiffs after Mr. Riggs was initially terminated and before his disciplinary hearing. The county commissioners were, of course, already aware of the alleged incident, and these plaintiffs could provide no additional firsthand knowledge.

We do not believe that by limiting the time and place for these plaintiffs to discuss what they had heard from Mr. Riggs, but had not witnessed, that the commissioners violated clearly established first amendment law. We therefore conclude that the commissioners are entitled to qualified immunity from liability to these plaintiffs on their first amendment claims.

VII.

Although the district court did not address the issue, the county commissioners also sought qualified immunity from liability on the equal protection claims, the parties briefed the issue, and we believe that the record on appeal is sufficient for us to resolve that question. *See Hunter*, 219 F.3d at 831. We first determine whether the plaintiffs have asserted a violation of their right to equal protection at all. *See Conn*, 526 U.S. at 290.

The threshold inquiry in an equal protection case is whether the plaintiff is similarly situated to others who allegedly received preferential treatment. *See Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994), *cert. denied*, 513 U.S. 1185 (1995). Here we conclude that the plaintiffs failed to assert an equal protection violation at all because they did not allege in their complaints that they were treated less favorably than any other individuals. For this reason, we conclude that the county

-10-

commissioners are entitled to qualified immunity with respect to the equal protection claims of all of the plaintiffs.

## VIII.

For the reasons given, we reverse that part of the district court's order denying qualified immunity to the county commissioners in their individual capacity as to the plaintiffs' equal protection claims and as to plaintiffs Wendell Domina, Linden Snyder, Van Harpold, and Jerry Soule's first amendment claims, and we remand the case for the entry of an order granting summary judgment to the county commissioners on these claims.

We affirm the part of the district court's order denying summary judgment to the commissioners in their individual capacity on the question of qualified immunity as to Mr. Riggs's first amendment claims and denying summary judgment to Mr. Person on the question of qualified immunity. Because we do not have jurisdiction to review a sufficiency of the evidence claim in an appeal from the denial of qualified immunity, *see Jones v. Shields*, 207 F.3d 491, 494 (8th Cir. 2000), we do not consider the commissioners' contention that Mr. Riggs presented insufficient evidence of causation to support his first amendment claim.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.