# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2347

_____

Claude Graves,                                  *
                                                *
              Appellant,                        *
                                                *
       v.                                       *
                                                *
Arkansas Department of Finance and              *
Administration; Richard Weiss,                  *
Director, in his individual and official        *   Appeal from the United States
capacities; Preston Means, Assistant            *   District Court for the
Commissioner of Revenue for                     *   Eastern District of Arkansas.
Operations and Administration, in his           *
individual and official capacities;             *         [PUBLISHED]
Everett Leath, Administrator, Office            *
of Field Audit, in his individual and           *
official capacities; Charles Stone,             *
Manager, Office of Field Audit, in his          *
individual and official capacities,             *
                                                *
              Appellees.                        *

_____

Submitted: September 15, 2000
Filed: October 17, 2000

_____

Before BOWMAN, BEAM, and BYE, Circuit Judges.

_____

PER CURIAM.

Claude Graves, a former tax auditor with the Arkansas Department of Finance Administration (ADFA), appeals the District Court's adverse grant of summary judgment in his 42 U.S.C. § 1983 action. We affirm in part, and reverse and remand in part.

Graves was hired in May 1988 at a regional audit field office (Office), which Charles Stone managed. In March 1993, as "final" discipline for a variety of improper activities, Graves was placed on six months probation and warned that any further similar complaints, if deemed accurate, would result in his termination.

In 1995 and 1996, Graves occasionally worked--on state time--on a cabin Stone was building. In February 1997, after Stone promoted another employee instead of Graves to a supervisor position, Graves filed a grievance (Grievance I) claiming in part that promotions were not based on merit or seniority. In April 1997, when ADFA Director Richard Weiss met with Graves about Grievance I, Graves told him that drug and alcohol abuse existed in the Office, and that auditors were building Stone's cabin on state time. Weiss denied Grievance I, but requested a state police investigation of Graves's allegations. During the resulting investigation, Graves identified for police specified dates in 1995 and 1996 when he had worked on the cabin on state time.

In May 1997 Graves filed a second grievance (Grievance II), complaining that Stone was harassing him by, inter alia, saying he would be sure Graves "toed the line" after the Grievance I process was over, ordering him not to discuss Grievance I in the Office, and demanding to know what Graves had told Weiss. Grievance II was settled.

In October 1997, while Graves and fellow auditor David Rickman were on a field audit in Ohio, they drove a state-owned vehicle to Canada, a violation of ADFA policy. The incident was reported to Stone, who in turn informed ADFA Administrator Everett Leath. In November Graves filed a third grievance (Grievance III), again complaining that Stone was harassing him and citing, as one instance of harassment,

his reassignment to motor-fuel audits, for which he had no experience. (He later attested it was a dead-end job.) Shortly thereafter, the state grievance committee denied Grievance I. Graves then received written notice that the state police report had been received, and that he was being terminated for using state time to work on Stone's cabin, for using a state vehicle for the Canada trip, and for incurring a major disciplinary action in May 1993 plus later "counselings." Although the notice was signed by Stone, ADFA Assistant Commissioner John Thies attested that he had made the decision to terminate Graves. Stone and a supervisor were suspended and placed on probation for approving or using sick time, or for using regular state time, for the cabin work; Rickman was suspended and placed on probation for the Canada trip. Grievance III was denied as moot.

Graves then filed the instant action, claiming violations of state and federal law-- and seeking damages, declaratory relief, and reinstatement--on the basis that (1) he had been harassed and terminated for reporting Stone's use of state employees to build his cabin, and for using the grievance system to complain about the denial of a promotion and about the subsequent harassment and threats, all in violation of the First Amendment; and (2) he had been discharged for taking a state car to Canada whereas Rickman had merely been suspended, in violation of equal protection.[1]

The District Court granted defendants' summary judgment motion. Although the court found that under the balancing test in Pickering v. Board of Education, 391 U.S. 563, 568 (1968), Grievance I and Graves's report of the cabin incident were matters of public concern and Graves's right to free speech outweighed defendants' interests, the court concluded that the cited harassment did not rise to the level of a constitutional violation, Graves's protected speech was not a motivating factor in his termination, and

---

[1]Graves also alleged a due process violation, but because he has failed to brief this claim, we find he has abandoned it. See Carter v. Chrysler Corp., 173 F.3d 693, 699 (8th Cir. 1999).

-3-

the evidence did not show Graves was harassed or threatened for the grievances. The court also found that Graves was not similarly situated to Rickman, and it declined jurisdiction over the state law claims.

Reviewing the grant of summary judgment de novo and construing all evidence and reasonable inferences from it in the light most favorable to Graves, see Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997), we find that Graves established a genuine issue of material fact as to whether his speech was a substantial or motivating factor in his termination. See Barnard v. Jackson County, Mo., 43 F.3d 1218, 1226 (8th Cir.) (finding that issue of whether protected speech played substantial role in public employee's termination is ordinarily issue of fact for jury), cert. denied, 516 U.S. 808 (1995). It can be inferred from the evidence that Stone sought to punish Graves because of Grievance I and the resulting cabin-work investigation; and while defendants contended that Thies was the decision-maker, Thies justified dismissing (instead of suspending) Graves in part by citing the Canada trip, a violation reported by Stone. See Darnell v. Ford, 903 F.2d 556, 561-62 (8th Cir. 1990) (stating that causation can be established by setting in motion series of acts by others which actor knows or reasonably should know would cause others to inflict constitutional injuries on third parties). Although there was a time lag of some months between Graves's protected speech and his termination, state police officers were completing their investigation during this period, and meanwhile Graves was being closely monitored and the Office atmosphere was tense. Cf. Barnard, 43 F.3d at 1226 ("At some point, the speech becomes so remote in time to the discharge that a court may rule as a matter of law that even if such speech enjoys First Amendment protection, it played no role in the employee's termination."). Also, defendants did not explain why the unspecified "counselings" subsequent to Graves's "final" 1993 warning had not previously resulted in his dismissal. Finally, the evidence also supports an inference that Stone ignored other incidents of improper use of, at least, state-rented vehicles.

We agree with the District Court, however, that Graves's separate harassment claim fails, as the incidents he cited do not constitute harassment or a hostile work environment. Cf. Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 967 (8th Cir. 1999) (finding that in context of sexual hostile-work-environment claim, employee must establish harassment was so severe or pervasive as to alter term, condition, or privilege of employment). In particular, Graves failed to submit evidence--other than his conclusory affidavit statement--that the motor-fuel-audit position to which he was reassigned was less prestigious or desirable, and it is undisputed that he received a raise, had the same benefits, and worked out of the same office. He also failed to adduce evidence that Stone's reason for reassigning him, a back-log in that division, was false. See Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1109 (8th Cir. 1998) ("Conclusory affidavits, standing alone, cannot create a genuine issue of material fact precluding summary judgment."); cf. Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997) (stating in response to a race discrimination claim that a purely lateral transfer that does not involve demotion in form or substance is not a materially adverse employment action). The equal protection claim also fails, as the evidence indicates Rickman had a clean employment record, Graves made no showing that other employees who had misused state-rented vehicles without being terminated had a history of past discipline, and the record reflects that these employees misused state-rented vehicles --not stated-owned ones, as to which the official-use-only policy was clear. See Arnold v. City of Columbia, Mo., 197 F.3d 1217, 1220 (8th Cir. 1999) (stating that employee must demonstrate he was treated differently from others similarly situated to him).

Accordingly, we affirm the grant of summary judgment as to the harassment and equal protection claims; but we reverse and remand for further proceedings consistent with this opinion as to the claim that Graves was terminated in violation of the First Amendment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.