Marvin J. SHAPE, Plaintiff,

v.

BARNES COUNTY, NORTH DAKOTA, a political subdivision of the State of North Dakota; and Randy McClaflin, individually and as Barnes County Jail Administrator, Defendants.

Civil No. A3–04–83.

United States District Court, D. North Dakota, Southeastern Division.

Oct. 14, 2005.

---

1070

Thomas Dayton Fiebiger, Ohnstad Twichell, Fargo, ND, for Plaintiff.

Mark A. Friese, Robert J. Udland, Vogel Law Firm, Fargo, ND, for Defendant.

## MEMORANDUM AND ORDER

WEBB, District Judge.

### I. Introduction

Before the Court is defendants' Motion to Dismiss or Alternatively for Summary Judgment (doc. # 19). The defendants move for dismissal or in the alternative for summary judgment on all causes of action alleged against the defendants, Barnes County and Randy McClaflin. As articulated below, the defendants' Motion is GRANTED IN PART AND DENIED IN PART.

### II. Background

Plaintiff, Marvin J. Shape, began employment with Barnes County on May 3, 1999, as a Correctional Officer. Shape was a Valley City Police Officer for over nineteen years prior to working for Barnes

County. After serving approximately two years as a Correctional Officer, Shape was promoted to Chief Correctional Officer. Shape served as Chief Correctional Officer until he was demoted in December of 2003. Defendant Barnes County is a political subdivision of the State of North Dakota, and defendant Randy McClaflin is the Sheriff of Barnes County and serves as the County Jail Administrator. The plaintiff has sued defendant McClaflin individually and as Barnes County Jail Administrator.

On November 23, 2003, Sheriff McClaflin informed Shape that he had received complaints that Shape was not paying the County Jail's bills on time. At that meeting, Shape informed McClaflin that he might have Attention Deficit Disorder ("ADD"). At the November 23 meeting, Sheriff McClaflin reprimanded Shape for his billing deficiencies but took no further disciplinary action.

Following the November 23 meeting, McClaflin received several written complaints from other Correctional Officers concerning Shape's behavior at the jail. On December 19, 2003, McClaflin received another complaint from Barnes County Auditor Linda Anderson about Shape's deficient billing. On December 30, 2003, McClaflin demoted Shape from his position as Chief Correctional Officer, citing billing deficiencies, lack of Bible study and recreation time for the inmates, lack of cell searches, and an incident involving Correctional Officer Sheila Salberg.

Following his demotion, Shape asked to see the coworker complaints lodged against him. After several oral requests for the records were denied, Shape retained an attorney. Barnes County eventually provided Shape with copies of the complaints following a written request from his attorney. On April 2, 2004,

Shape filed a grievance with Barnes County against McClaflin for the following reasons: (1) to inform Barnes County that McClaflin had demoted Shape for billing deficiencies despite the fact that McClafin had notice that Shape had ADD, (2) to report McClaflin's violation of Barnes County Policy and North Dakota open record laws, and (3) for reimbursement of attorney's fees incurred in requesting the coworker complaints.[1]

On April 12, 2004, the committee held a grievance hearing. Following a hearing, the grievance committee concluded that both sides were equally at fault and recommended "no action be taken on paying the attorney fees for Marvin Shape." Shape did not appeal the Committee's recommendation.

On April 19, 2004, Sheriff McClaflin and Chief Correctional Officer Denise Stanley met with Shape to discuss an incident involving Correctional Officer Kevin Schiffner. The incident allegedly occurred in late February or early March 2004. At the end of the April 19 meeting, McClaflin terminated Shape, citing the creation of a hostile work environment.

Shape initiated the present action on July 7, 2004. In his seven-count Complaint, Shape alleges discrimination by both Barnes County and Sheriff McClaflin, retaliation by both Barnes County and Sheriff McClaflin, Free Speech violation by both Barnes County and Sheriff McClaflin, and a Due Process violation by Barnes County. Shape seeks monetary damages in excess of $50,000, prejudgment interest, costs, attorney fees, and equitable relief available in the discretion of the Court. As stated earlier, the defendants move for dismissal or in the alternative for summary judgment. The defendants ar-

---

1. These are the reasons proffered by the plaintiff. Defendant contends that the request for attorney's fees was the only grievance before the committee.

gue that the Court lacks jurisdiction, that the defendants are entitled to immunity, and that Sheriff McClaflin had a legitimate, nondiscriminatory basis for demoting and firing the plaintiff.

## III. Discussion

### A. Standard of Review

 When considering a motion to dismiss, the Court must assume that all facts alleged in the Complaint are true and construe the Complaint in a light most favorable to the plaintiff. *Coleman v. Watt,* 40 F.3d 255, 258 (8th Cir.1994). The motion should be granted only if the plaintiffs can prove no set of facts that would entitle them to relief. *Id.*

██ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. A fact is "material" if it might affect the outcome of a case, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Churchill Bus. Credit, Inc. v. Pacific Mut. Door Co.,* 49 F.3d 1334, 1336 (8th Cir.1995).

██ All evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial responsibility to demonstrate the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and designate specific facts showing a genuine issue of material fact for trial. *Id.* at 324, 106 S.Ct. 2548. Thus, the "basic inquiry" for purposes of summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." *Quick v. Donaldson Co., Inc.,* 90 F.3d 1372, 1376 (8th Cir.1996)(citing *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). With this standard in mind, the Court begins its analysis.

### B. Jurisdiction

In his seven-count Complaint, Shape asserts that the defendants violated North Dakota Statutory Law and the United States Constitution. Shape contends that this Court has jurisdiction over the present case pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. The defendants contend that Shape's constitutional claims are frivolous and asserted for the sole purpose of obtaining jurisdiction.

██ 28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1343 provides that the district courts shall have original jurisdiction over any civil action commenced to "redress the deprivation, under color of any State law, ... of any right, privilege or immunity secured by the Constitution of the United States." To decide if the Court has jurisdiction over this action, it "must look to the way the complaint is drawn so as to claim a right to recover under the Constitution and laws of the United States." *Bell v. Hood,* 327 U.S. 678, 681, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Where a party draws a complaint as to seek recovery directly under the Constitution or law of the United States, the Court should usually entertain the suit. *Id.* at

681–82, 66 S.Ct. 773. The burden is on the plaintiff to prove that the Court has subject matter jurisdiction over the alleged causes of action.

█ In the instant case, the plaintiff asserts that the defendants violated his rights under the First Amendment and Fourteenth Amendment of the United States Constitution. It is clear from the way the Complaint is drawn that the plaintiff seeks recovery squarely on the ground that the defendants violated his constitutional rights. The fact that Shape also asserts causes of action under state law does not defeat this Court's jurisdiction. See 28 U.S.C. § 1367 (stating that district courts shall have supplemental jurisdiction over claims that are so related as to form part of the same "case or controversy" as the constitutional claims).

█ However, the Court can dismiss a suit for want of jurisdiction if the alleged claim under the Constitution or federal statute is clearly immaterial and "made solely for the purpose of obtaining jurisdiction" or where the alleged claim is wholly insubstantial and frivolous. *Id.* at 682–83, 66 S.Ct. 773. A bare allegation that a cause of action arises under the Constitution is not enough. *Stanturf v. Sipes,* 335 F.2d 224, 228 (8th Cir.1964).

Here, the alleged violations of the Constitution are not immaterial; they are a major basis of the relief sought. Also, this Court cannot say that the constitutional causes of action are so patently without merit as to justify dismissal for want of jurisdiction.

█ The defendants further assert that the plaintiff has a duty to bring his cause of actions under Title VII and the American with Disabilities Act ("ADA"). The Court disagrees. A plaintiff may bring suit under 42 U.S.C. § 1983 alone if his cause of action rests on a constitutional or statutory right independent of Title VII.

*See Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975)(finding that Title VII is not the exclusive remedy for discrimination in the workplace); *Garza v. City of Omaha,* 814 F.2d 553, 557 (8th Cir.1987)(holding that Title VII does not bar the use of § 1983 to redress violations of constitutional rights); *see also Day v. Wayne County Bd. of Auditors,* 749 F.2d 1199, 1205 (stating that "an employee may sue her public employer under both Title VII and § 1983 when the § 1983 violation rests on a claim of infringement of rights guaranteed by the Constitution").

Shape has asserted violations of the First and Fourteenth Amendments of the Constitution. These are constitutional rights independent of Title VII. Accordingly, Title VII does not bar Shape from bringing such claims.

For the reasons stated above and pursuant to 28 U.S.C. §§ 1331, 1343, and 1367, the Court has subject matter jurisdiction over the present action. Accordingly, the defendants' Motion to Dismiss for Lack of Jurisdiction is DENIED.

## C. Immunity

█ The Court should resolve immunity questions at the earliest possible stage of litigation. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The defendants argue that they are entitled to statutory immunity from the plaintiff's state law claims, that they are entitled to qualified immunity from the plaintiff's federal law claims, and that Barnes County is entitled to governmental immunity from the plaintiff's federal law claims. The plaintiff resists such contentions. Since different types of immunity apply to the defendants differently, the Court will address whether each defendant is entitled to immunity separately.

### 1. Barnes County

Barnes County first contends that it is entitled to immunity under section 32–12.1–03(3) of the North Dakota Century Code.

 Section 32–12.1–03(3) provides the following:

A political subdivision is not liable for any claim based upon an act or omission of a political subdivision employee exercising due care in the execution of a valid or invalid statute or regulation or based upon the exercise or performance, exercising due care, or· the failure to exercise or perform a discretionary function or duty on the part of a political subdivisions or its employees, whether or not the discretion is abused.

The defendants specifically rely on the discretionary function exception to political subdivision liability. However, whether or not the defendants engaged in a discretionary function in the present case is irrelevant because section 32–12.1–03(3) only provides immunity in tort cases.

In *Kitto v. Minot Park Dist.*, 224 N.W.2d 795 (N.D.1974), the North Dakota Supreme Court abolished the doctrine of governmental immunity but retained governmental immunity for discretionary acts. In explaining the discretionary function exception, the court explained that *"no tort action will lie against governmental units for those acts which may be termed discretionary in nature." Id.* at 804 (emphasis added). The North Dakota Legislature enacted section 32–12.1–03 specifically in response to the Kitto decision. Accordingly, it is evident that the Legislature intended the discretionary function exception to apply to actions in tort, not actions grounded in statute or the Constitution.

In addition, the language in section 32–12.1–03 comes directly from the Federal Tort Claims Act. *Olson v. City of Garrison*, 539 N.W.2d 663, 665 (N.D.1995). In fact, the court in *Kitto* stated that courts should look to case law dealing with the discretionary function exception under the Federal Tort Claims Act for guidance. 224 N.W.2d at 804–05. In *Berkovitz v. United States*, 486 U.S. 531, 536–37, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), the Supreme Court held, "The basis for the discretionary function exception was Congress' desire to 'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.' " (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)). It is clear that the Federal Tort Claims Act does ·not apply to actions other than torts.

Furthermore, Count I of the plaintiff's Complaint is based on the North Dakota Human Rights Act, sections 14–02.4–01 and 14–02.4–03 of the North Dakota Century Code. Section 14–02.4–02(12) includes a political subdivision in the definition of a "person" under the Act. Nowhere in the Act doe the Legislature limit a political subdivision's liability for discretionary functions, and the defendants have cited no case law indicating otherwise. Applying the Political Subdivision Liability Statute to the North Dakota Human Rights Act would circumvent the Legislature's intent in defining a political subdivision as a person under the Act. In sum, Barnes County is not entitled to immunity under section 32–12.1–03(3) of the North Dakota Century Code.

 The other type of immunity that potentially applies to Barnes County is governmental immunity from plaintiff's retaliation claim under the First Amendment. The plaintiff asserts his claim of First Amendment retaliation through 42 U.S.C. § 1983. Section 1983 does not create rights on its own; it provides a remedy for violation of rights created by the Constitution or federal statute. *Maine v. Thi-*

*boutot,* 448 U.S. 1, 5–6, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

■■■■■ Section 1983 applies to local government units. *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, it is well settled that the doctrine of respondeat superior does not apply under § 1983. *Id.* at 691, 98 S.Ct. 2018. Nevertheless, a plaintiff can establish governmental liability by proving that his or her constitutional rights were violated by an action pursuant to official county policy or misconduct so pervasive among non-policymaking employees as to constitute a custom or usage with the force of law. *Id.* There are two separate ways of finding governmental liability-through official policy or through pervasive custom and usage. *Ware v. Jackson County, Mo.,* 150 F.3d 873, 880 (8th Cir.1998).

In the present case, the defendants use the wrong analysis for governmental liability under § 1983. Their analysis is the right one for pervasive misconduct, but the facts do not show pervasive misconduct in this case. The facts show a single act by the Sheriff—the termination of the plaintiff. Accordingly, the County can only be held liable if the plaintiff's constitutional rights were violated by an action pursuant to official county policy.

■■■■ Under official policy analysis, governmental liability only attaches in this case if the Sheriff possesses final authority to establish employment policy with respect to the hiring and firing of jail employees. *Id.* at 481–82, 106 S.Ct. 1292; *Williams v. Butler,* 863 F.2d 1398, 1401 (8th Cir.1988). A county can be held liable for a single decision by a policymaker. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Whether or not the Sheriff is the final policymaker is a question of state law. *Pembaur,* 475 U.S. at 483, 106 S.Ct. 1292. The key question is whether county employment policy, as it pertains to jail employees, is set by the Board of Commissioners or by the Sheriff. *Id.* at 484 n. 12, 106 S.Ct. 1292. If the Board delegated its power to establish final employment policy to the Sheriff, liability would attach to his actions.

However, the Sheriff could still have discretion to hire and fire and not be the final policymaker. The distinction lies in the amount of authority retained by the Board of Commissioners in this case. For example, if the Board retained the right to review the hiring and firing decisions of the Sheriff, it has retained the authority to measure the Sheriff's conduct for conformance with their policies, and therefore the Sheriff would not be the final policymaker. *Williams,* 863 F.2d at 1401.

■■■ In the present case, defendant McClaflin testified in his deposition that he is the chief decision-maker regarding personnel matters for the correctional facility. In addition, the written job description of the Jail Administrator delegates the oversight of all staff to McClaflin. However, according to Barnes County policy, the jail administrator position is under the direct supervision of the Barnes County Board of Commissioners. Implicit in this oversight is the ability to review any personnel decisions made by McClaflin and therefore the authority to measure the Sheriff's conduct for conformance with their policies. As the Supreme Court stated in *City of St. Louis v. Praprotnik,* 485 U.S. 112, 130, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), "Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy."

In any event, this distinction is not critical in the present case because the Board of Commissioners directly ratified the Sheriff's decision. In a confidential settlement letter, Shape's attorney stated that

Shape believed he was terminated for improper reasons and that "Mr. Shape is requesting that he be immediately reinstated to his position with back pay and benefits." In a letter dated May 4, 2004, Barnes County State's Attorney, Robin Huseby, responded that the Board of Commissioners discussed the termination of the plaintiff and by unanimous vote, denied re-hiring Shape, denied paying his attorney fees, and denied disciplining Sheriff McClaflin. By denying Shape's requests contained in his Settlement Letter, the Commission adopted McClaflin's decision to terminate Shape, subjecting the County to direct liability for any violation of Shape's right under the First Amendment. See *Pembaur,* 475 U.S. at 484 n. 12, 106 S.Ct. 1292 (holding that a Board of County Commissioners' decisions would provide a basis for county liability).[2] In sum, Barnes County can be held directly liable under § 1983 for any violations of Shape's constitutional rights.

2. Sheriff McClaflin

The plaintiff has brought suit against Sheriff McClaflin both individually and as Barnes County Jail Administrator. The defendant contends that McClaflin is entitled to statutory immunity under North Dakota law and qualified immunity under federal law. As explained above, immunity under section 32–12.1–03 of the North Dakota Century Code does not apply to plaintiff's state law claims. Accordingly, the Court will only address the defendants' entitlement to qualified immunity.

[2] The County's liability under § 1983 for any violation of Shape's Due Process rights is simpler. Barnes County conducted the grievance hearing and therefore is directly liable for any violation of Shape's constitutional rights.

[3] The Court points out that qualified immunity only applies to suits against state officials in their individual capacities. *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d

Qualified immunity protects Sheriff McClaflin from liability if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).[3] Qualified immunity is an immunity from suit rather than a mere defense to liability. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The first question the Court must consider is whether taken in the light most favorable to the plaintiff, do the facts alleged show the officer's conduct violated a constitutional right? *Id.*

The plaintiff filed a grievance with the County complaining of Sheriff McClafin's violation of state open records laws. The plaintiff then alleges the defendants fired him for filing that grievance. Specifically, the plaintiff alleges that the complaints filed against him were factually inaccurate and that Sheriff McClaflin solicited the complaints to have something in writing to support Shape's termination. The plaintiff also alleges that many of the complaints used as a basis of his termination occurred before Sheriff McClaflin gave Shape a favorable evaluation in June of 2003. If the Court takes the facts as alleged by the plaintiff, it is probable that the defendants violated his First Amendment right to file a grievance and not be terminated for it.

Since a violation could be established out of a favorable view of the plaintiff's allegations, the Court must next ask whether the

301 (1991). The only type of immunity available to Sheriff McClaflin in his official capacity is whatever sovereign or governmental immunity the County possesses. *Id.* In the present case, the County enjoys no immunity from liability under § 1983. *See Owen v. City of Independence, Mo.,* 445 U.S. 622, 638, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980)(holding that municipality has no immunity from liability under § 1983).

right was clearly established. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. To be "clearly established," the right's contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202, 121 S.Ct. 2151 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

▄▄ In this litigation, there is no doubt that the Supreme Court has clearly established a First Amendment protection for public employees. *Belk v. City of Eldon,* 228 F.3d 872, 882 (8th Cir.2000); *see also Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)(stating, "It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech"). However, this showing is not enough; it must be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151. The dispositive question for the Court is whether the defendant can establish undisputed and material facts that demonstrate that he acted reasonable under the circumstances. *Turner v. Ark. Ins. Dep't,* 297 F.3d 751, 754 (8th Cir.2002).

The Court finds that the defendant has demonstrated that he acted reasonably under the circumstances. The undisputed facts show that Sheriff McClaflin did receive complaints from coworkers and inmates regarding Shape, factually inaccurate or not, prior to the plaintiff's termination. On November 26, 2003, McClaflin and Shape had a meeting regarding the plaintiff's billing difficulties. On December 30, 2003, McClaflin demoted Shape for his position as Chief Correctional Officer. In the demotion meeting notes, Sheriff McClaflin cited paperwork deficiencies, failure to conduct recreation time, fail-

ure to conduct Bible study, failure to conduct cell searches, and an incident involving Sheila Salberg as reasons for the plaintiff's demotion.

Sheriff McClaflin and new Chief Correctional Officer, Denise Stanley, met with Shape again on February 23, 2004, regarding work habit, an incident with inmate Rittenhouse, and Shape's use of his hands on inmates and other officers. On April 19, 2004, Barnes County terminated Shape, citing an incident with Kevin Schiffner as the basis. Because a reasonable officer would not have known his conduct was unlawful under the circumstances, summary judgment based on qualified immunity is appropriate. Accordingly, Count VI against Sheriff McClaflin in his individual capacity is DISMISSED.

### D. Merits of the Case

Since the Court has addressed the separate defendants' entitlement to immunity, it will now address the merits of the case.

#### 1. Discrimination Claims Under the North Dakota Human Rights Act

The plaintiff brings suit against Barnes County and Sheriff McClaflin individually and as jail administrator for violation of the North Dakota Human Rights Act ("NDHRA"), section 14–02.4–01 of the North Dakota Century Code. The plaintiff claims that the defendants demoted him because he had Attention Deficit Disorder.

▄▄ The Court will first address Count II, which is against Sheriff McClaflin. As this Court has previously stated, the NDHRA does not impose individual liability. *Fish v. Ristvedt,* 192 F.Supp.2d 1024, 1028 (D.N.D.2002). The NDHRA only applies to "employers" and "employees." The NDHRA's definition of "employer" does not include Sheriff McClaflin. The NDHRA's definition is similar to the Americans with Disabilities Act

("ADA"). *See Birchem v. Knights of Columbus*, 116 F.3d 310, 314 (8th Cir.1997) (citing *Schuhmacher v. North Dakota Hosp. Ass'n*, 528 N.W.2d 374 (N.D.1995))(stating that "in construing the [North Dakota Human Rights Act], the Supreme Court of North Dakota generally follows federal court decisions under analogous federal anti-discrimination statutes"). In the ADA context, courts generally do not impose individual liability. *E.g., Butler v. City of Prairie Vill.*, 172 F.3d 736, 744 (10th Cir.1999); see also *Spencer v. Ripley County State Bank*, 123 F.3d 690, 691–92 (8th Cir.1997)(holding that supervisors cannot be held personally liable under Title VII). Accordingly, Count II against Sheriff McClaflin is DISMISSED in its entirety[4].

■ As to Count I, the Court's focus is on whether the plaintiff can establish a prima facie case of discrimination under the NDHRA. Because of the similarities between the NDHRA and the ADA, the Court will look to federal law for guidance. *Schweigert v. Provident Life Ins. Co.*, 503 N.W.2d 225, 227 (N.D.1993). To establish a claim of discrimination under the NDHRA or the ADA, the plaintiff must show the following: (1) he is disabled within the meaning of the Act, (2) he is qualified to perform the essential functions of the job either with or without accommodation, and (3) he has suffered adverse employment action because of his disability. *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 948 (8th Cir.1999).

The NDHRA defines disability as a "physical or mental impairment that substantially limits one or more major life activities, a record of this impairment, or

being regarded as having this impairment." N.D. Cent.Code § 14–02.4–02(4) (2004). The definition of disabled is a "demanding standard." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

Shape asserts that his impairment is Attention Deficit Disorder and that it substantially limits the major life activity of working. The Court does not contest the fact that ADD can be an impairment or that working is a major life activity. The question, however, is whether Shape can prove ADD substantially limits his ability to work.

"Substantially limits" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i); *Ristrom v. Asbestos Workers Local 34 Joint Apprentice Comm.*, 370 F.3d 763, 769 (8th Cir.2004). Shape must offer evidence that the extent of his limitation is substantial. *Ristrom*, 370 F.3d at 769 (citing *Toyota Motor Mfg.*, 534 U.S. at 198, 122 S.Ct. 681).

■ In the present case, Shape has failed to offer evidence that proves that his claimed ADD substantially limits his ability to perform either a class of jobs or a broad range of jobs. Although Shape's treating Nurse Practitioner concluded that Shape does have ADD, merely submitting evidence of a medical diagnosis is not enough. *Toyota Motor Mfg.*, 534 U.S. at 198, 122 S.Ct. 681. Shape's conclusory allegation that he is substantially limited in the major life activity of working because

---

**4.** Any Count against McClaflin in his official capacity is also dismissed because a suit against an official in his official capacity is nothing more than a suit against the County. *See Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)(stating, "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). As such, any Count against McClaflin in his official capacity is repetitive.

he had some difficulties with billing is insufficient to withstand summary judgment. Shape worked as a police officer successfully for over nineteen years prior to being hired by Barnes County. He had worked as a Correctional Officer since 1999 and as Chief Correctional Officer since 2000. In fact, Shape received a satisfactory job performance rating in June of 2003. Shape now works as a welder, which no doubt entails great attention to detail.

In sum, Shape has failed to prove that he is "disabled" as defined under the NDHRA. Accordingly, Count I is hereby DISMISSED.

### 2. Retaliation Claims Under North Dakota Whistle–Blower Statute

 The plaintiff claims that the defendants terminated him in retaliation for filing a grievance, in violation of section 34–01–20 of the North Dakota Century Code. To establish a prima facie case for retaliatory discharge under section 34–01–20, the plaintiff must show that he engaged in protected activity and that the activity was causally related to his termination. *Dahlberg v. Lutheran Social Services of N.D.,* 625 N.W.2d 241, 253 (N.D.2001).

Under section 34–01–20, an employee's good faith report to the employer of a violation or suspected violation of federal or state law is protected activity. *Id.* In the present case, Shape filed his grievance in response to the refusal by defendants to provide him with copies of alleged complaints, a possible violation of Barnes County policy and North Dakota open records law. Accordingly, Shape engaged in protected activity.

 The plaintiff must next show that the grievance was causally related to his termination. Defendants contend that they terminated Shape in response to a complaint filed by Kevin Schiffner. The plaintiff contends that this reason is merely pretext. The Court holds that genuine issues of material fact exist as to whether Barnes County's proffered reasons are pretextual.

 Shape disputes the factual accuracy of many of the complaints lodged against him. In addition, Sheriff McClaflin was aware of many of the complaints he cited as reasons for Shape's termination prior to giving Shape a satisfactory job rating on June 3, 2003. Shape was never reprimanded for any of the complaints prior to his demotion in December 2003. Also, Sheriff McClaflin never received a written complaint from Kevin Shiffner until after Shape filed his grievance, even though the alleged incident happened at least a month earlier. Finally, the defendants terminated Shape so closely in time to the filing of his grievance as to justify an inference of retaliatory motive. *See Rath v. Selection Research, Inc.,* 978 F.2d 1087, 1090 (8th Cir.1992)(stating, "The requisite causal connection may be proved circumstantially by proof that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive"); *see also Heng v. Rotech Med. Corp.,* 688 N.W.2d 389, 399 (N.D.2004)(stating, "Proximity in time between the protected activity and the adverse employment action is 'particularly significant' "). Accordingly, Shape has established a prima facie case for retaliatory discharge. Therefore, defendants' Motion for Summary Judgment regarding Count III is DENIED.[5]

 Count IV of the Complaint asserts a claim of retaliatory discharge against Sheriff McClaflin individually and as Barnes County Jail Administrator. Like

---

**5.** The Court finds the defendants' argument that the plaintiff failed to exhaust his administrative remedies under the statute to be without merit.

the NDHRA, section 34–01–20 does not provide for individual liability against McClaflin. Although the statute does not define the term "employer," the fact that the County is the only party that could grant all of the available remedies—reinstatement, backpay, etc.—indicates that an individual cannot be liable under the statute. *See Cabinet for Families & Children v. Cummings,* 163 S.W.3d 425, 430–31 (Ky.2005)(finding no individual liability under state whistle-blower statute). Accordingly, Count IV of the Complaint is DISMISSED.

### 3. Retaliation Claim Under the First Amendment

 To establish a section 1983 claim for unlawful First Amendment retaliation, Shape must prove that he spoke out on a matter of public concern and that his protected speech was a substantial factor in the adverse employment action. *Ingram v. Johnson,* 187 F.3d 877, 879 (8th Cir.1999). If the speech addresses a matter of public concern, the Court must balance the interests of the employee, as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). This second inquiry is commonly called a Pickering analysis.[6]

 So, Shape's speech, which is a grievance in this case, must address a matter of public concern. Matters of public concern include matters of political, social, and other concerns to the community. *Belk v. City of Eldon,* 228 F.3d 872, 878 (8th Cir.2000). Speech that criticizes a

public employer in his capacity as a public official addresses matters of public concern. *Id.* However, not every statement made by a public employee about a job addresses a matter of public concern. *Id.* at 879. When a public employee's speech is purely job-related, that speech is not a matter of public concern. The question for the Court is whether Shape's grievance addressed solely personal matters or matters of public concern.

 In the present case, Shape's grievance addressed a matter of public concern because, at its base, it was a criticism of Sheriff McClaflin's conduct as a public official. Shape was specifically complaining about McClaflin's possible violation of North Dakota's open records laws, a matter of public concern.

 There still must be a causal connection between Shape's grievance and his dismissal. As explained above, the Court finds that the defendants have not met their initial burden of demonstrating the absence of any genuine issue of material fact and entitlement to judgment as a matter of law regarding whether Shape's grievance was a substantial factor in the County's decision to terminate him. This is especially so since the Eighth Circuit has repeatedly recognized that summary judgment should be used sparingly in employment cases. *E.g., Hardin v. Hussmann Corp.,* 45 F.3d 262, 264 (8th Cir.1995)(holding that summary judgments should only be granted when there is no dispute of fact and where there exists only one conclusion). Therefore, defendants' Motion for Summary Judgment regarding Count V is DENIED.

**6.** The Court will not go into a *Pickering* analysis in this case. In cases where the public employer cannot demonstrate that the employee's speech disrupted the workplace, the Court need not proceed to a specific *Pickering* factor analysis. *Sexton v. Martin,* 210 F.3d 905, 911–12 (8th Cir.2000).

### 4. Due Process Claim under the Fourteenth Amendment

 The plaintiff alleges that Barnes County denied him due process because a grievance committee included witnesses and complainants. The Fourteenth Amendment prohibits Barnes County from depriving employees of property rights without due process.

In the present case, a reasonable trier of fact could find that Barnes County denied Shape the right to an impartial grievance committee. Specifically, Barnes County Auditor, Linda Anderson, who lodged two complaints against Shape, was on the committee. Also, Linda McKenna, defendant McClaflin's secretary, served on the Committee. In addition, Shape was denied the right to cross-examine McClaflin at the hearing. All of these facts indicate that a reasonable trier of fact could find that Barnes County denied Shape due process during the grievance procedure. Accordingly, defendants' Motion for Summary Judgment regarding Count VII is DENIED.

### IV. Conclusion

For the reasons set forth above, defendants' Motion to Dismiss or Alternatively for Summary Judgment (doc. # 19) is GRANTED IN PART AND DENIED IN PART. Counts I, II, IV, and VI of the plaintiff's Complaint are HEREBY DISMISSED. The only counts remaining are Counts III, V, and VII. Because all remaining Counts are against Barnes County, Sheriff McClaflin shall be removed as a defendant from this case.